<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

RONALD DAVIDSON, :
: Civil Action No. 08-2679 (GEB)
       Plaintiff, :
:
:
       v. : **OPINION**
:
J. TAN, M.D. et al., :
:
       Defendants. :

<u>**BROWN, Chief Judge**</u>

      Presently before the Court is Defendants J. Tan, M.D., James Weisberger, M.D. and GenPath Inc.'s (collectively, "Defendants") Motion to Dismiss *pro se* Plaintiff Ronald Davidson's Complaint ("Plaintiff"). (Docket Entry No. 31.) Though Plaintiff has filed three documents since Defendants filed their Motion, none of the documents appear to be opposition. The Court has decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the following reasons, the Court will deny Defendants' Motion to Dismiss without prejudice. Further, the Court will also deny Plaintiff's Motion for Default Judgment (Docket Entry No. 15); Motion for Sanctions (Docket Entry No. 17); and Appeal of the Magistrate Judge's Order granting withdrawal and denying Plaintiff's request for appointment of new counsel. (Docket Entry No. 35).

I.  FACTUAL AND PROCEDURAL HISTORY

The following facts are taken from Plaintiff's Complaint.  Plaintiff is currently an inmate at the Shawangunk Correctional Facility in Wallkill, New York, in the custody of the New York State Department of Corrections.  (Docket Entry No. 1, Pl's Compl. ¶1.)  On or about August 3, 2005, David Mills, M.D. excised a specimen of tissue from Plaintiff's lower eyelid and sent said specimen to Defendants for evaluation.  (*Id.* at ¶4.)  Defendants provided their "Dermatopathology Report" on or about August 5, 2005.  (*Id.* at ¶5.)  According to their report, the specimen indicated "early melanoma in-situ, arising in a compound dyplastic nevus.  The lesion extends to both lateral edges of the specimen.  Complete re-excision is advised." (*Id.*) Subsequently, a Dermapathology Outside Consultation was performed on the same specimen by the Albany Medical Center at the request of David Michael Mills, M.D.  (*Id.* at ¶8.)  Andrew Carlson, M.D. generated the outside consultation report on August 23, 2005.  (*Id.* at ¶9.)  Among other things, Dr. Carlson concluded that "these changes are interpreted reactive, related to site and underlying fibrosis and do not signify melanoma in situ.  Nonetheless, conservative re-excision of this site is recommended to prevent local recurrence." (*Id.*)  On or about September 9, 2005, Plaintiff underwent the second excision and a tissue sample was collected.  (*Id.* at ¶16.) The sample was submitted to Defendants who conducted testing and issued a dermopathology report which concluded that the tissue was "dermal scar, old.  Comment: This may be a reaction to a cyst or adjacent to chalazion." (*Id.*)

Plaintiff alleges that Defendants' mis-diagnosis caused him to have "pain and suffering and extreme emotional distress." (*Id.* at ¶11.)  Plaintiff also alleges that it "caused [him] to develop a fear and phobia of having cancer." (*Id.*)  Plaintiff further alleges that the re-excision

was painful and caused scarring. (*Id.* at ¶13.) For damages, Plaintiff is seeking one million dollars in compensatory damages from each defendant and three million dollars in punitive damages from each defendant. (*Id.* at ¶18.)

     Plaintiff initially filed his Complaint on January 21, 2008 in the Eastern District of New York. (Docket Entry No. 5, Transfer Order.) Subsequently, on March 21, 2008, the Eastern District of New York transferred Plaintiff's case to the District of New Jersey because Defendant GenPath is located in New Jersey and Defendants Tan and Weisberger are employees of GenPath. (*Id.*) This Court granted Plaintiff's *in forma pauperis* application and the United States Marshal served Plaintiff's Complaint on the Defendants. (Docket Entry No. 13.) On December 17, 2008, the Court granted Plaintiff's application for *pro bono* counsel and stayed all discovery and motion practice pending the appointment of counsel. (Docket Entry No. 14.) On January 5, 2009, Plaintiff filed a Motion for Default Judgment against the Defendants for failing to file an answer by the December 16, 2008 deadline. (Docket Entry No. 15.) On January 16, 2009, Defendants filed an Answer. (Docket Entry No. 16.) On April 17, 2009, Plaintiff filed a Motion to hold Defendants in contempt because Defendants served Plaintiff with a notice of deposition, interrogatories and request for document production, in violation of the Court's December 17th Order. (Docket Entry No. 17.) Plaintiff also alleged that Defendants had failed to serve him with a copy of their Answer. (*Id.*)

     On April 23, 2009, Defendants responded to Plaintiff's Motions, stating that they did not enter an appearance in the case until January 2009 and they did not recall receiving the Magistrate Judge's Order staying discovery until *pro bono* counsel is appointed. (Docket Entry No. 18.) Defendants further state that they served Plaintiff with their Answer via regular and

3

certified mail and though they had not received the return receipt from the certified mail, the Answer sent regular mail had not been returned as undeliverable.  (*Id.*)

On May 7, 2009, the Court dismissed Plaintiff's Motions for Default and Contempt without prejudice and permitted pro bono counsel to re-raise any motions as appropriate. (Docket Entry No. 19.)  On October 26, 2009, pro bono counsel entered an appearance on behalf of Plaintiff.  (Docket Entry No. 21.)  On March 5, 2010, Plaintiff wrote a letter to the Magistrate Judge requesting that his court-appointed counsel be relieved and that another pro bono attorney be appointed.  (Docket Entry No. 25.)  On March 24, 2010, Plaintiff's pro bono counsel filed a Motion to Withdraw and on March 31st, the Magistrate Judge granted counsel's Motion and permitted him to withdraw.  (Docket Entry Nos. 28 & 29.)  The Court declined to appoint a second pro bono attorney and ordered that Plaintiff would proceed pro se.  (*Id.*)  The Court also ordered that all discovery was extended through June 1, 2010 and any summary judgment motions must be filed by July 15, 2010.  (*Id.*)  On April 14, 2010, the Defendants filed the instant Motion to Dismiss.  (Docket Entry No. 31.)

On April 26, 2010, Plaintiff filed a letter objecting to the Magistrate Judge's March 31st Order declining to appoint replacement counsel.  (Docket Entry No. 32.)  Plaintiff argued that pro bono counsel never met with him or took his phones calls; that he failed to obtain his medical records; that he practices in medical malpractice defense; and that he failed to provide Plaintiff with the names of the experts that he conferred with on an informal basis which led him to conclude that Plaintiff's claims were not supported by fact.  (*Id.*)   Plaintiff requested that Defendants' Motion to Dismiss be held in abeyance until his Motions for Default Judgment and Contempt and his request for replacement counsel are decided.  (*Id.*)  Plaintiff also requested that

4

he receive an extension of time after his Motions are decided to respond to Defendants' Motion. (*Id.*)  On May 4, 2010, the Magistrate Judge addressed Plaintiff's "objections," construing said "objections" as a motion for reconsideration of the Court's decision to allow pro bono counsel to withdraw and declining to appoint new counsel.  (Docket Entry No. 34.)  The Magistrate Judge denied reconsideration.  (*Id.*)

On May 24, 2010, Plaintiff filed "objections" to the Magistrate Judge's May 4, 2010 Order.  (Docket Entry No. 35.)  It appears that Plaintiff intends these "objections" to be construed as an appeal of the Magistrate Judge's Order denying him appointment of replacement counsel. Plaintiff also appears to be renewing his Motions for Default Judgment and Contempt, as well as requesting transfer of his entire case to the Eastern District of New York.[1]  (*Id.*)

## II.  DISCUSSION

### A.  Appeal of Magistrate Judge's Order Regarding pro bono Counsel

### 1.  Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Local Civil Rule 72.1(a), a United States Magistrate Judge may hear non-dispositive motions. On appeal, a district court may modify or set aside a magistrate judge's non-dispositive order if the ruling was "clearly erroneous or contrary to law."  FED.R.CIV.P. 72(a); L. CIV. R. 72.1(c)(1) (A); *see also Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1113 (3d Cir. 1986).  A ruling is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite

---

[1] The Court will not address Plaintiff's request to transfer the case as it does not comply with the requirements set forth in L. Civ. R. 7.1 and is only raised in a paragraph in Plaintiff's "objections" to the Magistrate Judge's May 4, 2010 Order.

5

and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A magistrate judge's order is contrary to law "when the magistrate judge has misinterpreted or misapplied the applicable law." *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006) (citing *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F.Supp.2d 761, 764 (D.N.J. 2000)). "Some courts find that 'where an appeal seeks review of a procedural matter that a magistrate judge routinely is called upon to decide such as appointment of pro bono counsel, the 'abuse of discretion' standard' may be applied.'" *Hennessey v. Atlantic County Dept. of Public Safety*, No. 06-143 (NLH), 2008 WL 4691990, at *2 (D.N.J. October 22, 2008) (citing *Rhett v. New Jersey*, No. 07-131 (DRD), 2007 WL 1456199, at *2 (D.N.J. May 14, 2007). "An abuse of discretion occurs: when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted." *Leap Sys., Inc. v. Moneytrax, Inc.*, No. 05-1521, 2010 WL 2232715, at *3 (D.N.J. June 1, 2010) (internal quotations and citations omitted). As was the case in *Hennessey*, because this Court finds that the Magistrate Judge's ruling was not clearly erroneous or contrary to law, it is not necessary to apply the more deferential "abuse of discretion" standard.

2. Analysis

Appointment of counsel under 28 U.S.C. §1915(e)(1) may be made at any point in the litigation and may be made by the Court *sua sponte*. *See Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994). The plaintiff has no right to counsel in a civil case. *Id.* at 153-54; *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). In evaluating a

motion to appoint counsel, the court must first examine the merits of Plaintiff's claim to determine if it has "some arguable merit in fact and law." *See Tunnell v. Gardell*, 2003 WL 1463394, at * 1 (D.Del. Mar. 14, 2003)(citing *Parham*, 126 F.3d at 457) (other citations omitted). If the court is satisfied that the claim is "factually and legally meritorious," then the following factors must be examined: (1) a plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of a plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether a plaintiff can attain and afford counsel on his or her own behalf. *Id.* (citing *Parham*, 126 F.3d at 457-58; *Tabron*, 6 F.3d at 155-56, 157 n. 5). However, a court should also consider other factors, such as the lack of funding to pay appointed counsel, the limited supply of competent lawyers willing to do pro bono work, and the value of lawyers' time. *See Tabron*, 6 F.3d at 157-58.

  In this case, the Magistrate Judge initially found that the *Tabron* factors weighed in favor of appointing pro bono counsel, however, after review of the factors and the facts of this case, the Magistrate Judge did not find that appointment of replacement pro bono attorney would be appropriate. This Court also finds that appointment of a second pro bono attorney is not appropriate. Looking at the *Tabron* factors, the Court finds that Plaintiff has shown that he is more than capable of presenting his own case, as he has filed several motions and letters without the aid of counsel. Further, the legal issues in this case appear to be only negligence and medical malpractice. Factual investigation will not be an issue as it appears that Plaintiff was intimately involved with all aspects of the alleged incidents. Though the Court concedes that the final three

factors weigh slightly in favor of appointment of counsel, the Court must also consider other factors such as the lack of funding to pay appointed counsel, the limited supply of competent lawyers willing to do pro bono work, and the value of lawyers' time.  In this case, given the reasons for the withdrawal of the previously appointed pro bono attorney and looking at the facts of the case, the Court finds that appointment of replacement pro bono counsel is not warranted.  Therefore, the Court will affirm the Magistrate Judge's denial of replacement pro bono counsel.

**B.  Default Judgment and Sanctions**

**1.  Legal Standard**

Default is governed by Federal Rule of Civil Procedure 55.  Rule 55(a) provides, in relevant part: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  FED. R. CIV. P. 55(a).  "Thereafter, the plaintiff may seek the Court's entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2)."  *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, No. 07-1522, 2008 WL 940782 (D.N.J. April 7, 2008) (citation omitted). "The district court has the discretion to enter default judgment, although entry of default judgment is disfavored as decisions on the merits are preferred." *Super 8 Motels, Inc. v. Kumar*, No. 06-5231, 2008 WL 878426 (D.N.J. April 1, 2008) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1983)).  "[D]ismissals with prejudice or defaults are drastic sanctions, termed 'extreme' by the Supreme Court, *National Hockey League*, 427 U.S. at 643, 96 S.Ct. at 2781, and are to be reserved for comparable cases." *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 867-68 (3d Cir. 1984).

Before entering default judgment, the court "must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady*, 250 F.R.D. at 177 (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987) (stating that "we have further required the district court to make explicit findings concerning the factors it must consider in rendering judgment by default or dismissal, or in declining to reopen such judgment")). "In weighing these factors, district courts must remain mindful that, like dismissal with prejudice, default is a sanction of last resort." *Id.* (citing *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867-68 (3d Cir.1984)). A defendant demonstrates a meritorious defense if "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). Therefore, a defendant's assertions "must contain specific facts that would allow Defendants to advance a complete defense" and must be substantively sufficient. *Days Inn Worldwide v. Jerbev Corp.*, No. 08-1659, 2009 WL 97128 (D.N.J. April 8, 2009) (citing *United States v. $55,518.05 in U.S. Currency, 728 F.2d at 195-96; Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 983 (3d Cir.1988)).

**2. Analysis**

At the outset, the Court notes that Plaintiff has not requested that the Office of the Clerk of this Court enter default against Defendants pursuant to Federal Rule of Civil Procedure 55(a). *See Husain v. Casino Control Comm'n*, No. 07-3636, 2008 WL 449763 (3d Cir. February 20, 2008) (stating that "entry of default by the Clerk under Federal Rule of Civil Procedure 55(a) constitutes a general prerequisite for a subsequent default judgment under Rule 55(b)"). *See also*

9

*Bank of Nova Scotia v. James*, 2008 WL 4587243 (D.Virgin Islands October 8, 2008); *Mims v. McCall*, No. 06-4551, 2008 WL 2276313 (D.N.J. June 2, 2008); 10A Charles Alan Wright, Federal Practice and Procedure § 2682 (2007) (stating that "[p]rior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)").

Even assuming, *arguendo*, that Plaintiff had requested that the Clerk of the Court enter default against Defendants, the Court would still find that entry of default judgment against Defendants is not appropriate in this case. Though it is not entirely clear to the Court, it appears that Plaintiff is requesting default judgment on three different grounds. First, Defendants filed their Answer on January 16, 2009, one month after the deadline for filing a responsive pleading without seeking an extension of time to answer. (Docket Entry No. 15.) Second, Plaintiff alleges that Defendants did not serve him with their Answer and that Defendants lied to the Court when they stated that they sent a copy of the Answer via certified and regular mail. As a sanction for these alleged actions, Plaintiff requests that Defendants' Answer be stricken and default judgment entered. (Docket Entry No. 17.) Third, Plaintiff alleges that Defendants' Answer should be stricken and default judgment entered for improperly serving discovery requests on the *pro se* Plaintiff when the Magistrate Judge had previously ordered that all discovery shall be stayed until pro bono counsel could be appointed. (Docket Entry No. 17.)

The Court finds that Defendants have put forth several meritorious defenses, both in their Answer and their Motion to Dismiss. The Court further finds that the prejudice to Plaintiff was minimal, if any. Even if the Court were to find that Plaintiff was not properly served with Defendants' Answer initially, at the very latest, Plaintiff received said Answer on August 25,

10

2009 when the Court provided him with a copy. (Docket Entry No. 20.) Since all discovery and motion practice had been stayed since December 17, 2008 pending appointment of pro bono counsel, the prejudice to Plaintiff caused by the delay would be minimal, if any. Further, Defendants' service of discovery requests on Plaintiff while the stay was in place also caused little to no prejudice to Plaintiff. It does not appear and Plaintiff does not allege that he responded or was forced to respond to any of the discovery requests. Rather, it appears that once Defendants were made aware of the stay, no further requests were made until after pro bono counsel entered his appearance on behalf of Plaintiff. Finally, though the details of Defendants' relationship with their counsel have not been made clear to this Court, if Defendants delayed in retaining said counsel, which caused the late filing of the Answer, Defendants could be considered minimally culpable for the late Answer. However, weighing all the factors, the Court finds that entry of default judgment is not appropriate in this case.

To the extent that Plaintiff is arguing that Defendants' Answer should be stricken and default judgment entered as a sanction, the Court also finds that is not warranted in this case. The Third Circuit Court of Appeals has instructed that courts deciding motions for entry of default judgment as a sanction engage in a six-part analysis. "In deciding whether to impose a default, the district court must consider: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary; (3) a history of dilatoriness; (4) whether the conduct of the party [or] the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 919( 3d Cir. 1992) (citing *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)). These factors

"should be weighed by the district courts in order to assure that the 'extreme' sanction of dismissal or default is reserved for the instances in which it is justly merited." *Poulis*, 747 F.2d at 870. In applying this test, however, "[e]ach factor need not be satisfied for the trial court to dismiss a claim." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003).

As discussed above, Defendants themselves do not appear to be responsible for their attorneys improperly serving discovery requests. Further, also as previously discussed, the prejudice to Plaintiff is minimal, if at all. Defendants have not exhibited any dilatoriness, other than the incident raised by Plaintiff. The conduct does not appear to have been in bad faith, as Defendants state that they were not aware of the order staying discovery and the Defendants have raised meritorious defenses both in their Answer and in the pending Motion to Dismiss. As such, the Court does not find that any sanctions are warranted, and certainly the drastic sanction of entering default judgment is not warranted.

## C. Defendants' Motion to Dismiss

Defendants filed a Motion to Dismiss for "failure to serve and file an affidavit of merit pursuant to N.J.S.A. 2A:53A-27." In his "objections" to the Magistrate Judge's March 31, 2010 Order, Plaintiff requested that Defendants' Motion to Dismiss be held in abeyance until his Motions for Default Judgment and Contempt and his request for replacement counsel are decided. Plaintiff also requested that he receive an extension of time after his Motions are decided to respond to Defendants' Motion. Though the Court did not specifically grant Plaintiff's request for a stay and extension of time to respond, it appears that Plaintiff may have been under the impression that his requests were granted, as he did not file opposition to the motion. Taking the potential misunderstanding regarding the deadline for filing opposition into

consideration and given the Court's denial of Plaintiff's request for replacement counsel, the Court will grant Plaintiff an additional period of sixty days to produce an affidavit of merit. If at the end of that period, Plaintiff has failed to serve an affidavit of merit on Defendants, Defendants may re-new their Motion to Dismiss or file any other motion they may deem appropriate.

### III.  CONCLUSION

For the reasons stated above, the Court will deny Defendants' Motion to Dismiss without prejudice. [Docket Entry No. 31.] Further, Plaintiff's Motion for Default Judgment [Docket Entry No. 15]; Motion for Sanctions [Docket Entry No. 17]; and Appeal of the Magistrate Judge's Order granting withdrawal and denying Plaintiff's request for appointment of new counsel [Docket Entry No. 35] are hereby denied. Plaintiff shall have sixty days from the date of this Opinion to serve an Affidavit of Merit on Defendants. If Plaintiff fails to do so, Defendants may re-new their Motion to Dismiss or file any other motion they may deem appropriate. An appropriate form of order accompanies this memorandum opinion.

Dated: December 30, 2010

/s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.